Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
William E. Johnston - State Bar No. 287707
    wjohnston@birdmarella.com
Michael C. Landman - State Bar No. 343327
    mlandman@birdmarella.com
Devon E. Porter - State Bar No. 308365
    dporter@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Grigor Termendjian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GRIGOR TERMENDJIAN,<br><br>Defendant. | CASE NO. 2:23-CR-00453-JLS<br><br>**DECLARATION OF DEVON E. PORTER IN SUPPORT OF DEFENDANT'S MOTION TO LIFT AEO PROTECTIVE ORDER AND COMPEL GOVERNMENT TO PRODUCE WITHHELD DISCOVERY**<br><br>**FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED _____**<br><br>Date:    June 28, 2024<br>Time:    1:30 p.m.<br>Crtrm.:  8A<br><br>Assigned to Hon. Josephine L. Staton |

3957700.1

# DECLARATION OF DEVON E. PORTER

I, Devon E. Porter, declare as follows:

1. I am an active member of the Bar of the State of California and an Associate with Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP, attorneys of record for Defendant Grigor Termendjian in this action. I make this declaration in support of Defendant's Motion To Lift AEO Protective Order And Compel Government To Produce Withheld Discovery. Because this declaration is made for that limited purpose, it does not purport to set forth all of the information I have about these matters. Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2. Attached as **Exhibit A** is a true and correct copy of the Government's Unopposed Motion for AEO Protective Order filed May 8, 2023, in this case prior to the matter being transferred to the Central District of California, at the time captioned *United States. v. Grigor Termendjian*, Case No. 2:23-CR-00119-DAK (D. Utah). This Motion was docketed as Docket No. 18.

3. Attached as **Exhibit B** is a true and correct copy of the AEO Protective Order entered on June 9, 2023, by the Utah court in this matter. This Order was docketed as Docket No. 24.

4. Attached as **Exhibit C** is a true and correct copy of a December 7, 2023 letter and the accompanying enclosure from Trial Attorney Erika V. Suhr of the Tax Division of U.S. Department of Justice ("DOJ Tax") to Mr. Termendjian's prior counsel at Armstrong Teasdale LLP. The letter is marked as "Attorneys' Eyes Only," and the subject line reads ███████████████████ ███████████████████████████████ ████████████████

5. Attached as **Exhibit D** is a true and correct copy of a May 13, 2024 unsigned letter from the DOJ Tax Division to counsel for Mr. Termendjian,

3957700.1

1

responding to several inquiries that followed an earlier meet and confer.

6.  Attached as **Exhibit E** is a true and correct copy of a May 14, 2024 letter from counsel to the DOJ prosecutors assigned to this case regarding "Protective Orders."

7.  Attached as **Exhibit F** is a true and correct copy of a May 15, 2024 letter from counsel to the DOJ prosecutors assigned to this case regarding "Documents Supporting Plea Offer and Indictment."

8.  On May 17, 2024, I participated in a call with DOJ Attorneys Richard M. Rolwing and Erika V. Suhr. My colleague William E. Johnston participated as well. During the call, Mr. Rowling and Ms. Suhr communicated that the government had additional evidence to support its stated concerns about witness safety. They stated that the government was not willing to share that evidence or the nature of Mr. Termendjian's purported conduct with defense counsel, and that evidence of Mr. Termendjian's alleged conduct in that regard was not contained in any discovery that had been produced to date. Government counsel also communicated that some of the evidence establishing Mr. Termendjian's guilt would come in the form of witness testimony, information about which they were not willing to share with defense counsel at that time and which was being withheld under the protective order. I understood this to mean that the evidence regarding Mr. Termendjian's alleged knowledge that the transactions involved criminal proceeds was contained in the withheld material.

9.  Attached as **Exhibit G** is a true and correct copy of a May 20, 2024 email from Erika V. Suhr.

//

//

//

//

//

3957700.1

2

DECLARATION OF DEVON E. PORTER IN SUPPORT OF DEFENDANT'S MOTION TO LIFT AEO PROTECTIVE ORDER AND COMPEL GOVERNMENT TO PRODUCE WITHHELD DISCOVERY

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on May 30, 2024, at Los Angeles, California.

_____
Devon E. Porter

3957700.1

3

DECLARATION OF DEVON E. PORTER IN SUPPORT OF DEFENDANT'S MOTION TO LIFT AEO PROTECTIVE ORDER AND COMPEL GOVERNMENT TO PRODUCE WITHHELD DISCOVERY

# EXHIBIT A

TRINA A. HIGGINS, United States Attorney (#7349)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
ERIKA V. SUHR, Trial Attorney, Tax Division (FL #1020532)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: richard.m.rolwing@usdoj.gov
       john.e.sullivan@usdoj.gov
       erika.v.suhr@usdoj.gov

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:23-CR-00119-DAK |
| Plaintiff, | : | |
| v. | : | GOVERNMENT'S UNOPPOSED MOTION FOR PROTECTIVE ORDER |
| GRIGOR TERMENDJIAN, | : | District Judge Dale A. Kimball |
| | | Magistrate Judge Dustin B. Pead |
| Defendant. | : | |
| | : | |

---

## UNITED STATES' UNOPPOSED MOTION FOR PROTECTIVE ORDER

The United States, by and through undersigned counsel, hereby requests that the Court issue a protective order, pursuant to Federal Rule of Criminal Procedure 16(d)(1), ordering that any pre-trial disclosure of Jencks Act type material which is designated to be for Attorney Eyes Only ("AEO") be handled in the manner described herein.

On March 30, 2023, the grand jury in the District of Utah returned a six-count Indictment alleging that Defendant Grigor Termendjian engaged in a seven-year conspiracy to defraud the

1

United States, a money laundering conspiracy, and expenditure money laundering, all involving tens of millions of dollars in proceeds of a mail fraud scheme against the Internal Revenue Service and the United States Treasury. (Doc. No. 1)

Defendant Termendjian appeared for initial appearance and arraignment in Utah on April 14, 2023 (Doc. No. 10). On that date, Magistrate Judge Pead granted the defendant's oral motion for discovery and set a status conference for June 16, 2023 (*Id.*).

Counsel for Defendant Termendjian has requested production of Jencks Act type material. Pursuant to the Jencks Act, codified at 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2, a defendant may discover any statement made by a government witness that is in the possession of the United States only after the witness has testified at trial. 18 U.S.C. § 3500(a) and (b); Fed.R.Crim.P. 26.2. It has long been the law that "[t]he Jencks Act prohibits the pretrial discovery of statements made by prospective government witnesses." *United States v. Smaldone*, 544 F.2d 456, 461 (10th Cir. 1976); *see also United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (Internal citations omitted) ("No statute or rule, moreover, requires pretrial disclosure of non-expert witnesses. Federal Rule of Criminal Procedure 16 provides limited discovery obligations on behalf of prosecutors. But it does not entitle defendants to discover the identity of government non-expert witnesses before trial. Under Rule 16(a)(2), a defendant may only discover statements made by prospective government witnesses as provided under the Jencks Act, 18 U.S.C. § 3500 (1976). The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only after the witness has testified on direct examination at trial.").

On or about the date of arraignment, the government informed defense counsel that, while it reserves its right to produce some Jencks Act type material consistent with the statutory

2

provision, it was willing to provide the bulk of the Jencks Act material three weeks before whatever is the final and certain trial date. And, even with an early production of the bulk of the Jencks Act type material, the government reserves the right not to provide the most sensitive of the Jencks Act type materials prematurely due to the safety concerns it has for the witnesses in this case. The government is prepared to present, if required, in an *ex parte* in camera showing to the Court sufficient evidence to support such safety concerns.

Defense counsel does not object to the government's proposed protective order with respect to Jencks Act-type material, but in an April 19, 2023 email to government counsel, stated that they reserve the right to revisit the strictures of any protective order upon evaluating the basis for the government's safety concerns for the witnesses in this case.

The government is cognizant of the need for the defense to have adequate time to prepare for trial. Therefore, the government intends to follow the AEO protocol proposed by the government and approved by the District Court recently in the case of *United States v. Fuller*, No. 16-CR-867-GPC, 2017 WL 3457166 at *3-4 (S.D. Cal. Aug. 11, 2017), which was also adopted in the case more associated with this matter, *United States v. Kingston, Dermen*, No. 18-CR-00365, (Doc. 100).

In *Fuller* and in the *Kingston* case in this Court, due to safety concerns for some of the governments' witnesses, the government proposed an AEO disclosure order, which the Court substantially adopted. In that case, the AEO Jencks' type statements were disclosed three weeks before trial to the attorneys only. The attorneys were not permitted to disclose the names of the witnesses to the defendant in any manner whatsoever earlier than three days prior to trial.

## CONCLUSION

For the reasons stated herein, the Court should issue a protective order that the pretrial

3

disclosure of Jencks Act type material by the government that it provides prior to trial in an effort to assist the defense in adequately preparing for trial which is designated as "AEO" be for Attorney Eyes Only ("AEO"), and that the names of the witnesses not be disclosed to the defendants by defense counsel earlier than three days prior to trial.

Respectfully submitted this 8th day of May 2023.

TRINA A. HIGGINS
United States Attorney

*/s/ Erika V. Suhr*
ERIKA V. SUHR
Trial Attorney
RICHARD M. ROLWING
Special Assistant United States Attorney
JOHN E. SULLIVAN
Senior Litigation Counsel

<u>Certificate of Service</u>

I certify that on the 8th day of May 2023 I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby causing a true and correct copy of the foregoing to be delivered to counsel of record.

<u>/s/Erika V. Suhr</u>
Erika V. Suhr
Trial Attorney

TRINA A. HIGGINS, United States Attorney (#7349)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
ERIKA V. SUHR, Trial Attorney, Tax Division (FL #1020532)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682
Email:  richard.m.rolwing@usdoj.gov
       john.e.sullivan@usdoj.gov
       erika.v.suhr@usdoj.gov

_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:23-CR-00119-DAK |
| Plaintiff, | : | |
| | : | PROPOSED AEO PROTECTIVE ORDER |
| v. | : | |
| GRIGOR TERMENDJIAN | : | District Judge Dale A. Kimball |
| | | Magistrate Judge Dustin B. Pead |
| Defendant. | : | |

**AEO PROTECTIVE ORDER**

Upon the motion of the United States for a proposed AEO Protective Order, and for the reasons stated in the government's motion, the Court concludes that there is good cause to issue a AEO Protective Order as to any Jencks Act-type material that the government discloses pretrial which is marked as Attorneys' Eyes Only ("AEO").

WHEREAS the government must provide discovery to the defense pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); and the Jencks Act, 18 U.S.C. § 1600, (the "discovery obligations"), and WHEREAS the government has the right and reserves its right under the

1

Jencks Act to disclose witness statements after a witness has testified upon direct examination at trial, and WHEREAS the government has agreed that it will disclose the bulk of the Jencks Act-type material three weeks prior to trial, it is hereby:

ORDERED that the government may designate certain material in its Jencks Act-type material production as AEO.

IT IS FURTHER ORDERED that defense counsel shall be permitted to raise with the Court concerns or objections regarding the scope of this AEO Protective Order and/or the timing of the government's disclosures, or otherwise seek modification of this order in advance of trial.

IT IS FURTHER ORDERED that if defense counsel wishes to receive the Jencks Act-type material prior to trial that the government is willing to provide, the materials the government designates as AEO will be governed by the following:

(a) as to any of the Jencks Act-type material disclosed by the government pretrial that falls within this AEO Protective Order, the government will stamp the material with an "AEO" designation.

(b) that all Jencks Act-type material disclosed by the government pretrial also falls within the Court's anticipated Order in response to the Government's Motion for Discovery and Protection Order with regard to 26 U.S.C. § 6103 information. (Doc. __.)

(c) that as to the Jencks Act-type material identified by the government as covered by this Order, the material shall only be disclosed to the assigned defense counsel (counsel of record), other defense counsel working with counsel of record (and defense counsel of record shall notify the government of the identity of such additional defense counsel, the defense attorneys' legal assistants, and any

2

designated defense investigators (collectively "the Defense") pursuant to this AEO Protective Order, which will enable the Defense to prepare for trial without prematurely identifying the cooperating witnesses to the defendant.  The Defense shall not show to, discuss with, or disclose in any other manner the identity of the government's witnesses contained in the AEO Jencks Act-type material (copies or otherwise) to the defendant earlier than three days prior to trial.

DATED this _____ day of May, 2023

_____
DUSTIN B. PEAD
U.S. Magistrate Judge

Presented by:

TRINA A HIGGINS
United States Attorney

/s/ Erika V. Suhr
ERIKA V. SUHR
Trial Attorney
RICHARD M. ROLWING
Special Assistant United States Attorney
JOHN E. SULLIVAN
Senior Litigation Counsel

# EXHIBIT B

TRINA A. HIGGINS, United States Attorney (#7349)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
ERIKA V. SUHR, Trial Attorney, Tax Division (FL #1020532)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: richard.m.rolwing@usdoj.gov
      john.e.sullivan@usdoj.gov
      erika.v.suhr@usdoj.gov

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:23-CR-00119-DAK |
| Plaintiff, | : | |
| v. | : | |
| | | AEO PROTECTIVE ORDER |
| GRIGOR TERMENDJIAN | : | |
| Defendant. | : | District Judge Dale A. Kimball |
| | | Magistrate Judge Dustin B. Pead |

**AEO PROTECTIVE ORDER**

Upon the motion of the United States for a proposed AEO Protective Order, and for the reasons stated in the government's motion, the Court concludes that there is good cause to issue a AEO Protective Order as to any Jencks Act-type material that the government discloses pretrial which is marked as Attorneys' Eyes Only ("AEO").

WHEREAS the government must provide discovery to the defense pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); and the Jencks Act, 18 U.S.C. § 1600, (the "discovery obligations"), and WHEREAS the government has the right and reserves its right under the

1

Jencks Act to disclose witness statements after a witness has testified upon direct examination at trial, and WHEREAS the government has agreed that it will disclose the bulk of the Jencks Act-type material three weeks prior to trial, it is hereby:

ORDERED that the government may designate certain material in its Jencks Act-type material production as AEO.

IT IS FURTHER ORDERED that defense counsel shall be permitted to raise with the Court concerns or objections regarding the scope of this AEO Protective Order and/or the timing of the government's disclosures, or otherwise seek modification of this order in advance of trial.

IT IS FURTHER ORDERED that if defense counsel wishes to receive the Jencks Act-type material prior to trial that the government is willing to provide, the materials the government designates as AEO will be governed by the following:

(a) as to any of the Jencks Act-type material disclosed by the government pretrial that falls within this AEO Protective Order, the government will stamp the material with an "AEO" designation.

(b) that all Jencks Act-type material disclosed by the government pretrial also falls within the Court's anticipated Order in response to the Government's Motion for Discovery and Protection Order with regard to 26 U.S.C. § 6103 information. (Doc. __.)

(c) that as to the Jencks Act-type material identified by the government as covered by this Order, the material shall only be disclosed to the assigned defense counsel (counsel of record), other defense counsel working with counsel of record (and defense counsel of record shall notify the government of the identity of such additional defense counsel, the defense attorneys' legal assistants, and any

2

designated defense investigators (collectively "the Defense") pursuant to this AEO

Protective Order, which will enable the Defense to prepare for trial without

prematurely identifying the cooperating witnesses to the defendant.  The Defense

shall not show to, discuss with, or disclose in any other manner the identity of the

government's witnesses contained in the AEO Jencks Act-type material (copies or

otherwise) to the defendant earlier than three days prior to trial.

DATED this __9th__ day of June, 2023

_____
DUSTIN B. PEAD
U.S. Magistrate Judge

Presented by:

TRINA A HIGGINS
United States Attorney

_/s/ Erika V. Suhr_____
ERIKA V. SUHR
Trial Attorney
RICHARD M. ROLWING
Special Assistant United States Attorney
JOHN E. SULLIVAN
Senior Litigation Counsel

# EXHIBIT C





# EXHIBIT D



**U.S. Department of Justice**

**Tax Division**

*Western Criminal Enforcement Section*
*150 M Street, N.E., Room 2.102*          *(202) 514-5762*
*Washington, D.C.  20002        Telefax:  (202) 514-9623*

May 13, 2024

SENT VIA ELECTRONIC MAIL

Re:     *United States v. Grigor Termendjian*, 2:23-cr-453-JLS

Dear Counsel:

Please see the responses to your email dated May 1, 2024 below:

1.  Government agrees to identify by bates numbers and/or exhibit numbers the supporting documents for the tracing charts featured in the plea offer letter.

The Government has shared with you a Box folder link containing the exhibits and supporting documents for the tracing charts incorporated into the plea offer letter. Note that these are already in the defense's possession.

2.  Government agrees to provide an index of the 2.22 million files in the government's possession that have not been produced to us.

The Government is still in the process of creating an additional production which will affect the universe of records that are related to the overarching investigation, but which have not been produced to you to date. Whether the number of files is 2.22 million or less will need to be further discussed and determined.  All these records have been available to the defense and remain so today upon your request, but the production provided and requested by the defense to date has focused on records relevant to this case. The Government, in consultation with former defense counsel, created a list of search terms to capture relevant records.  As we offered to former defense counsel, we are prepared to run further search terms upon request.

There may be, as we review the material in preparation for trial, later productions of additional records that were not responsive to the search terms executed pursuant to the agreement with counsel.  In other words, in an abundance of caution, the prosecution team may make further productions as we approach the trial date regardless of search terms. However, at this time, we anticipate that the above-referenced additional production and the accompanying indexes of everything on the prosecution side will be produced by close of this week.  As to the documents that are on the "filter side," we are in the process of re-engaging a filter team who could

communicate with you regarding and provide further insight into an index pertaining to records that are not available to the prosecution team. Finally, since our last conference and after hearing your position we have narrowed the number of records that will be later produced as designated AEO on the basis of witness security.

3. Government agrees to identify the number of grand jury transcripts, reports of interview, or other witness statements that have been withheld from the defense due to security concerns, and the number of witnesses to whom they pertain.

The Government anticipates producing 15-25 records from 4-8 potential witnesses as per the protocol outlined in the "AEO" Protective Order due to witness safety concerns. The bulk of the records are from a single witness. At this time, we are refraining from disclosing how many witnesses testified at the prior trial versus "new" witnesses as that may lead to prematurely revealing the identity of the witnesses at issue. We understand that you may be opposed to the "AEO" Protective Order and we are open to meeting to confer further. We'll note that, as you've noted, we have already disclosed a number of witness statements well in advance of the timeline for disclosure of such statements as per the local practice.

4. Government agrees to separately produce all the trial and forfeiture exhibits from Levon's case.
   a. We did not discuss but we also request that you also provide all marked exhibits, regardless of whether they were admitted.

The Government has produced via Box folder the requested admitted exhibits. However, due to the various iterations of exhibits and the several trial dates in the Utah matter, "all marked exhibits regardless of admission" is not clear nor practical to identify.  If, however, there are particular documents related to some exhibit from some pre-existing exhibit list you are interested in, we are happy to assist in identifying those documents for you.

5. We requested that the government provide a reverse proffer as to the evidence against our client, but short of that, for direction to the interview reports and documents in the discovery—by bates numbers—that support the facts laid out in the plea offer letter.  We understood you would consider the reverse proffer request but agreed to the latter request.

The speaking indictment details the allegations which the evidence will show.  Your client also attended the trial of Lev Dermen every day for weeks and is familiar with the evidence.  At this time, we have no reason to believe a reverse proffer would be productive in resolving this case. Please let us know if your client is interested in resolving this matter before the trial. As to the latter request, please let us know the particular questions you have regarding the facts laid out in the plea offer and/or the indictment.  If permitted, we can provide direction to pertinent interview reports or documents. A meeting might be more productive once you have all the requested indexes.  If you have further questions, we can meet at the earliest mutually available opportunity to discuss the indexes we have already provided and how to navigate the discovery.

6.   We requested a list of all the devices, email accounts, and locations that were searched and seized pursuant to search warrants as part of the government's investigation.  You indicated you would consider the request.

Most of the search warrant material in the government's possession stems from a series of warrants executed on February 10, 2016 on the following sites, most of which are Order-related, and not related to the instant case.  We have provided the applications for search warrant as well as the inventories from each site searched. We have also provided a list of devices from which ESI was seized pursuant to the February 2016 search warrants.

-   10 West Century Parkway ("Century Office")
-   14944 Pony Express Dr (C7 Data Server)
-   2072 E Creek Rd (Jacob Kingston residence)
-   2862 S State St., Salt Lake City ("Cornerstone Office")
-   3140 South Main St. ("Tax Office")
-   3950 South 700 East (WRE Office)
-   6257 South Hathaway St. (April McKay residence)
-   670 East 3900 South Suite 300

The government also executed search warrants on the following email addresses:

-   Google



-   MS

-   Yah o

An additional search warrant was executed on Jacob Kingston's phone seized on his person the day he was arrested in 2018.  In addition, an earlier phone of his was also imaged in April 2015 upon his re-entrance into the country from Belize.

A search warrant was also executed on the premises of Grease Depot, Inc. located in 2805 126th Ave. North Clearwater, Fl.

- 3 -

7. We requested a list of terms and a description of the protocol used to identify the approximately 700k potentially privileged materials that are on the filter side, and, if not reflected in the index requested in #2, a summary of how many files came from which devices. You indicated you would consider the request.

Since we are not clear as to relevance of this request given that we believe no materials of your client's were subject to a search and no privilege he holds would be affected, we decline this request at this time.

8. We requested a list of the search terms that were used to identify which materials were within the scope of the Attachment B of the search warrants, and, if not reflected in the index requested in #2, the number of files deemed within the scope for each device or account searched.  You indicated you would consider the request.

Since we are not clear as to relevance of this request given that we believe no materials of your client's were subject to a search and no privilege he holds would be affected, we decline this request at this time.

# EXHIBIT E



**Ariel A. Neuman**

(310) 201-2100 ☎
aneuman@birdmarella.com ✉
www.birdmarella.com 🌐

May 14, 2024

**Via Electronic Mail Only**

Richard M. Rolwing
DOJ Trial Attorney
Tax Division
Richard.M.Rolwing@usdoj.gov

Erika V. Suhr
DOJ Trial Attorney
Tax Division
Erika.V.Suhr@usdoj.gov

> Re:  *United States v. Grigor Termendjian*, CR 23-453-JLS
>      **Protective Orders**

Dear Counsel:

We are in receipt of your letter dated May 13, 2024, responding to certain inquiries and requests we made regarding the discovery in this matter.  We are reviewing your correspondence and the material you provided and will come back to you with our responses as necessary.

We write immediately, however, to address time-sensitive and significant concerns regarding the protective orders entered by the Utah Magistrate Judge (Utah Dkt. Nos. 23 and 24) following the government's motions (Utah Dkt. Nos. 17 and 18).[1]  We had understood from our conversation on April 29 that the government was unwilling to revisit these issues, but we appreciate your offer to meet and confer and we write in response to that invitation.

We have particular concerns regarding the following aspects of the protective orders :

---

[1]     For ease of reference, we refer to docket entries in the matter of *United States. v. Termendjian*, Case No. 2:23-CR-00119-DAK (D. Utah), as coming from the "Utah Dkt."  We refer to the related case of *United States v. Kingston et al.*, CR 18-365-JNP (D. Utah) as the "*Kingston* Case."

May 14, 2024
Page 2

      1.     The procedure outlined for the production of certain discovery as "Attorneys' Eyes Only" or "AEO" as set forth in Utah Dkt. No. 24, including the designation of any material as AEO, the production of such material to defense counsel only three weeks prior to trial and with significant restrictions, and the restriction on defense counsel not to "show to, discuss with, or disclose in any manner the identity of the government's witnesses contained in the AEO Jenks Act-type material (copies or otherwise) to the defendant earlier than three days prior to trial."  Utah Dkt. No. 24 at 3.

      2.     The order that "Defense counsel is precluded from leaving copies of any material provided in discovery with any of the defendants." Utah Dkt. No. 23 at 3.

      3.     The prohibition on defense counsel providing to Mr. Termendjian any discovery material that contains "personal identifying information of any individual, including without limitation, any individual's date of birth, social security number, address, telephone number, email address, driver's license number, professional license number, or family members' names ('Personal Information') unless it belongs to the defendant or unless defense counsel first redacts the Personal Information from the discovery material."  Utah Dkt. No. 23 at 2.

      4.     The prohibition on defense counsel providing Mr. Termendjian any discovery material that contains "financial information of any individual or business, including without limitation, bank account numbers, credit or debit card numbers, account passwords, account names and contact information, account history, account balances, account statements, tax return information, or taxpayer identification numbers ('Financial Information') unless it belongs to the defendant, or unless defense counsel first redacts the Financial Information from the discovery material."  Utah Dkt. No. 23 at 2.

In support of these restrictions, in May 2023 the government cited to the Utah court 1) "the nature of the crimes charged and the sensitive personal and financial information included in the discovery material" (Utah Dkt. #17 at 4), and 2) "concerns about the safety of witnesses and others who have information about the conduct alleged in the Indictment" (*Id.* at 6); *see also* Utah Dkt. #18 at 3 (citing "safety concerns [the government] has for the witnesses in this case").  The government provided no detail to the Utah court regarding the purported safety concerns, but offered to make an "*ex parte*

May 14, 2024
Page 3

showing" regarding "the defendant's willingness to take steps to intimidate and harm witnesses for the purposes of obstructing the investigation."  Utah Dkt. #17 at 6; *see also* Dkt. #18 at 3 (offering to make an *ex parte* in camera showing to the Court).  To our knowledge, the Utah court did not request such a showing and none was made.  Prior defense counsel apparently did not object to the proposed order at the time, but reserved the right to revisit the issue "upon evaluating the basis for the government's safety concerns for the witnesses in this case."  Utah Dkt. #18.

Seven months later – in December 2023 – you sent prior defense counsel



May 14, 2024
Page 4


███████████████████████████████████████████████████████████████████████████████████████.[3]

Simply put, there is no basis to think that our client poses a threat to the safety of any witnesses or anyone else.  As your May 13 letter notes, our client sat through his brother's entire trial, and at no point during or after trial did he threaten or intimidate anyone.  Moreover, although the government also told the Utah court that the discovery restrictions imposed here are consistent with those adopted in the *Kingston* Case (Utah Dkt. #18 at 3), we understand that is inaccurate.  We understand that in the *Kingston* Case, the government provided all witness statements to counsel well in advance of trial (and certainly more than three weeks before trial).

Finally, there is nothing about "the nature of the crimes charged" that warrants the restrictions placed on our ability to prepare a defense and have our client assist in the preparation of his defense.  This case involves only allegations of tax fraud and money laundering, with no allegations of misused or stolen identities or financial information, and nothing that would justify restricting our or our client's access to discovery.  If anything, the nature of the conspiracies alleged – spanning multiple states and countries and involving at least two foreign languages – compels the conclusion that early disclosure of all evidence is critical so that we may properly investigate it, in consultation with our client.  Investigating matters spanning the globe and requiring fluency in multiple languages cannot happen in the span of three weeks, let alone three days.

Nonetheless, our ability to work with our client to prepare his defense is being hindered by our inability to freely provide discovery to him, the government's withholding "15-25 records from 4-8 potential witnesses," and the government's refusal to even tell us whether any of those witnesses already testified publicly in the *Kingston* Case.  May 13, 2024 Letter from Government re Discovery at 2.  Further, in a financial case, our client is not allowed to have discovery containing anyone's email address or telephone number, account names, and balances, etc.  These restrictions go far beyond the minimal redactions required by Federal Rule of Criminal Procedure 49.1 for *public*

---

[3] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

May 14, 2024
Page 5

filings.  These are onerous and unjustified restrictions that inhibit our ability to prepare for trial and our client's ability to assist in his defense.

Critically, from our initial review of the discovery in this case, it appears that there is no document or witness statement that the government has produced which would establish our client's knowledge that the funds at issue were criminal proceeds or that the statements on his tax returns were false, or which would establish the requisite scienter elements for the charged offenses.  We asked you to provide a reverse proffer in part to point us to the critical evidence and you declined.  *Id*.  We are left with the inescapable conclusion that the government is withholding the key pieces of evidence at the heart of this case without justification, relying only on its baseless purported concerns about witness safety.

The belated disclosure of *Brady*, Giglio and Jenks material in the trial of the *Kingston* matter regarding key cooperators – including evidence demonstrating that Jacob Kingston, the key government witness, perjured himself – only heightens our concerns and highlights the problems posed by the restrictions imposed in this case.  (*See, e.g., Kingston* Case, Dkt. No. 1603.) The post-trial revelations in that matter demonstrate that early and full investigation by the defense is necessary to properly represent our client and protect his Constitutional rights.  Such representation is impossible under the restrictions the government has imposed in this case.

We also note Judge Staton's standing Order re Criminal Proceedings which directs the government to "comply promptly with discovery and notice" rules, and produce "forthwith" "any evidence within the scope of *Brady*."  Order re Criminal Proceedings ¶ 7.

*       *       *       *

We understood from our telephone call on April 29, 2024, that the government is unwilling to revisit the Protective Orders.  Accordingly, we were in the midst of preparing a motion to lift the protective orders and compel production of all relevant witness statements when we received, two weeks later, your May 13, 2024 offer to meet and confer.  We are responding promptly because time is of the essence if there is any hope of keeping the current trial date.

If the government is willing to stipulate to the withdrawal of the protective order regarding AEO material, and to stipulate that defense counsel may share discovery material with Mr. Termendjian (so long as PII information identified in Fed. R. Crim. P.

May 14, 2024
Page 6


49.1 is redacted), please let us know by no later than May 17, 2024.  Specifically, we request that the government stipulate to the withdrawal of the protective order entered at Utah Dkt. #18 in its entirety, and the modification of the protective order entered at Utah Dkt. #17 to remove paragraphs (a) and (b) on page 2 and the following clause on page 3: "defense counsel is precluded from leaving copies of any material provided in discovery with any of the defendants."[4]

We remain available to discuss this matter further but we must resolve these meet and confer efforts within the week.

We look forward to hearing from you.  If you believe that any of the facts contained herein are inaccurate, please advise us immediately.

Sincerely,

Ariel A. Neuman

3953880.1

---

[4]     If there is specific information in the categories identified by Fed. R. Crim. P. 49.1 that you believe needs to be redacted we are willing to consider specified, targeted redactions before sharing discovery with our client.  That is a far cry from the blanket prohibitions imposed by the protective orders.

# EXHIBIT F

# BIRD MARELLA LLP

BIRD • MARELLA • RHOW • LINCENBERG • DROOKS • NESSIM

**Ariel A. Neuman**

(310) 201-2100 ☎
aneuman@birdmarella.com ✉
www.birdmarella.com 🌐

File 5440.2

May 15, 2024

**Via Electronic Mail Only**

Richard M. Rolwing
DOJ Trial Attorney
Tax Division
Richard.M.Rolwing@usdoj.gov

Erika V. Suhr
DOJ Trial Attorney
Tax Division
Erika.V.Suhr@usdoj.gov

Re:  ***United States v. Grigor Termendjian**, CR 23-453-JLS*
**Documents Supporting Plea Offer and Indictment**

Dear Counsel:

Thank you for your May 13, 2024 letter. We are in the process of reviewing your responses and the documents you provided via Box.com, and await your further production of material as promised this Friday. We expect to provide a more complete response to your letter next week but write now to address a discrete issue raised by your letter.

In an email to you on May 1, 2024, we memorialized our understanding that the government had agreed during our April 29 conversation to provide "direction to the interview reports and documents in the discovery—by bates numbers—that support the facts laid out in the plea offer letter." In your May 13 letter, you responded:

> [P]lease let us know the particular questions you have regarding the facts laid out in the plea offer and/or the indictment. If permitted, we can provide direction to pertinent interview reports or documents.

(Letter from USDOJ Tax Division, May 13, 2024.) In response to your request, we write to identify the facts in the plea offer and indictment for which we would appreciate your direction as to the pertinent interview reports or documents (or other supporting evidence).

May 15, 2024
Page 2

1.      Any evidence that "[i]n 2012, defendant Termendjian, Levon Termendzhyan, Jacob Kingston, and Korkmaz met in Los Angeles and Las Vegas." Plea Letter at 4.

2.      Any evidence that Mr. Termendjian "opened the [Speedy Lion] account for the sole purpose of receiving the fraud proceeds." Plea Letter at 2.

3.      Any evidence that Mr. Termendjian "requested that the fraud proceeds be laundered through multiple bank accounts in Turkey before being sent to the Speedy Lion Investments account in Los Angeles." Plea Letter at 2.

4.      Any evidence that Mr. Termendjian conducted or caused to be conducted any of the wire transfers set forth in Table A of the indictment (other than those set forth in paragraphs M & N).

5.      Any evidence that Mr. Termendjian was aware of or agreed to the creation of "[f]alse documents . . . mischaracterizing the nature and source of the fraud proceeds to disguise the fact that the funds were taxable fraud proceeds" (Plea Letter at 2), including those set forth in the Plea Letter at 7-8

6.      Any evidence that Mr. Termendjian knew that "[f]or 2013, Speedy Lion Investment's tax return falsely characterized the $9 million in fraud proceeds as paid-in capital." Plea Letter at 2.

7.      Any evidence that Mr. Termendjian knew that "[f]or 2014, Speedy Lion Investment's tax return falsely characterized another $9 million in fraud proceeds as a loan." Plea Letter at 2.

8.      Any evidence that Mr. Termendjian knew that "[f]or 2015, Speedy Lion Investment's tax return falsely characterized the loan proceeds as an accounts payable $12,881,848 and partners' capital of $8,996,723," or that the "return also falsely characterized $20,972,003 in fraud proceeds as an investment in 'LNG Fixture & Construction.'" Plea Letter at 2.

9.      The bates numbers for the Speedy Lion Investments and Century Energy tax documents referenced in the indictment, Mr. Termendjian's personal tax returns, and the cashier's check transactions referenced in the indictment.

10.     Any evidence that Mr. Termendjian "knew that the Fraud Proceeds were income to him or to Levon Termendzhyan" and that "[h]is

**Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP**
1875 Century Park East, 23rd Floor, Los Angeles, California 90067-2561

May 15, 2024
Page 3

mischaracterization of the Fraud Proceeds as various nontaxable events on his personal and business returns was intended to disguise the true nature of the funds from the IRS." Plea letter at 3.

11.    Any evidence that Mr. Termendjian, as opposed to others, "[f]rom September 12, 2013 to September 19, 2013, . . . caused approximately $9 million dollars in fraud proceeds to be wired to the Speedy Lion Investments account opened on September 10, 2013." Plea Letter at 4.

12.    Any evidence that Mr. Termendjian "requested that $9 million be laundered through multiple Turkish accounts before being wired back to the Speedy Lion Investments account." Plea Letter at 4; Indictment ¶ 20(e).

13.    Any evidence that Mr. Termendjian, as opposed to others, "[o]n January 24, 2014 . . . caused $9 million to be sent to the Speedy Lion Investments Bank of America account." Plea Letter at 4.

14.    Any evidence that Mr. Termendjian, as opposed to others, in or about October and early November 2015, in connection with $20,000,000 transferred to Turkey, gave "instructions to return the funds to the United States to the bank account in the name of G.T. Energy and to falsely characterize the transaction as a 'share purchase,'" or that Mr. Termendjian knew about those transactions.  Indictment ¶ 20(r).

15.    The bates numbers of the documents reflecting the relevant Century Energy transactions, including Counts 3 through 6 of the Indictment.

16.    The bates number of the transaction referenced in paragraph 20(ff) in the Indictment.

We appreciate your assistance in pointing us to the discovery material that supports these factual assertions. As I am sure you will appreciate, identifying these items will assist us in evaluating your plea offer and discussing it with our client.

To the extent you decline to identify discovery material because you are not "permitted" to do so (per your May 13 letter), please identify the allegations for which such withholding applies and explain what permission you believe is needed before you can identify relevant material to us. We are not aware of any restrictions on the government's ability to produce discovery in support of its allegations or any special permission that would be needed to do so.

May 15, 2024
Page 4

We appreciate your prompt response to this request.

Sincerely,

Ariel A. Neuman

AAN:dep

3954377.2

# EXHIBIT G

**William E. Johnston**

| | |
|---|---|
| **From:** | Suhr, Erika V. (TAX) <Erika.V.Suhr@usdoj.gov> |
| **Sent:** | Monday, May 20, 2024 4:01 PM |
| **To:** | William E. Johnston; Devon E. Porter |
| **Cc:** | Rolwing, Richard M. (TAX); Ariel A. Neuman; Michael C. Landman |
| **Subject:** | RE: Friday phone call follow-up |
| **Attachments:** | U.S. v. Termendjian Motion for Protective Order .docx; U.S. v. Termendjian Proposed Protective Order.docx |

Will:

Got it. We will send you the IRS records.

We cannot agree to the proposed modification. We are willing to turn over the AEO records four weeks before trial to defense counsel only, maintaining the limitations imposed on Mr. Termendjian. Unfortunately, we are not willing to compromise further.

Please see attached the proposed modification of the protective order relating to financial information and Section 6103.

As always, feel free to reach out.

Erika

**From:** William E. Johnston <WJohnston@birdmarella.com>
**Sent:** Monday, May 20, 2024 6:14 PM
**To:** Suhr, Erika V. (TAX) <Erika.V.Suhr@usdoj.gov>; Devon E. Porter <DPorter@birdmarella.com>
**Cc:** Rolwing, Richard M. (TAX) <Richard.M.Rolwing@usdoj.gov>; Ariel A. Neuman <aneuman@birdmarella.com>; Michael C. Landman <MLandman@birdmarella.com>
**Subject:** [EXTERNAL] RE: Friday phone call follow-up

Hi Erika,

Thank you for sending those files via Box.  We will let you know if we cannot locate anything.  Regarding the tax returns, we had already located the ones produced by Davidian. We were looking for the versions filed with the IRS.  Please let us know if the government never obtained those.

On Friday, while discussing our possible motion challenging the protective order that permits the government to delay production of witness statements and apply an AEO designation to those statements, you had indicated that you were open to a modification of the deadline for the disclosure of the AEO materials.  To ensure we have adequate time to prepare for an October trial, we request disclosure to defense counsel only of the currently withheld AEO materials by June 10.  Please let us know by COB, Tuesday, May 21 if you would agree to that modification.

You had also indicated that you would send draft language modifying the protective order requiring redactions.  Please send over that language as soon as possible.

1

Best,

Will

**William E. Johnston**
Partner

**Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP**
1875 Century Park East, 23rd Floor, Los Angeles, California 90067-2561
www.birdmarella.com • 310.201.2100 • LinkedIn • wjohnston@birdmarella.com

---

**From:** Suhr, Erika V. (TAX) <Erika.V.Suhr@usdoj.gov>
**Sent:** Monday, May 20, 2024 1:35 PM
**To:** William E. Johnston <WJohnston@birdmarella.com>; Devon E. Porter <DPorter@birdmarella.com>
**Cc:** Rolwing, Richard M. (TAX) <Richard.M.Rolwing@usdoj.gov>; Ariel A. Neuman <aneuman@birdmarella.com>; Michael C. Landman <MLandman@birdmarella.com>
**Subject:** Friday phone call follow-up

Will and Devon:

Per our conversation on Friday, you should now have access to three Zip files on Box containing the admitted Termendzhyan and forfeiture trial exhibits as well as the Turkish bank records in our possession.

As for tax returns pertaining to your client in the discovery, they should be under file path: Tax – Document Organization/Records/Davidian, David. If you feel like you're missing something, please let us know.

Erika

_____
**Erika V. Suhr**
Trial Attorney, Western Criminal Enforcement
U.S. Department of Justice, Tax Division
150 M Street NE
Washington, DC  20002
Cell: (202) 746-9301

2