TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
RICHARD M. ROLWING (OH Bar No. 0062368)
Senior Litigation Counsel
Megan L. Jones (CA Bar No. 348651)
Trial Attorney
Criminal Division, Tax Section
950 Pennsylvania Ave. NW
Washington D.C. 20530
Telephone: (202) 598-5471
E-mail: Richard.m.rolwing@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>GRIGOR TERMENDJIAN,<br><br>Defendant. | No. 2:23-CR-00453-JLS<br><br>GOVERNMENT'S REPLY IN SUPPORT OF APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A) |

Defendant Termendjian opposes the government's request to preserve property that has been forfeited in one case, and is subject to forfeiture in this case, by raising arguments that belie common sense and are simply inapplicable. The court should grant the United States's *ex parte* application and enter the proposed order submitted therewith.

## I. THE LEASE PAYMENTS ARE SUBJECT TO RESTRAINT BECAUSE THEY ARE DIRECTLY TRACEABLE TO PROPERTY INVOLVED IN THE OFFENSE

The lease payments are not substitute assets, but directly traceable to the property involved in the offenses of conviction in Utah and also the charges brought in this case. A person convicted of money laundering under 18 U.S.C. § 1956 must "forfeit any property, real or personal, involved in such offense, and any property traceable to such property." 18 U.S.C. § 982(a)(1). The government merely seeks to preserve property that is traceable to the money laundering crimes already found in Utah, and also brought against Defendant in this case.

The lease payments are traceable to the conduct that the defendant is charged with in this case. He is charged with knowingly engaging in disguised and concealed financial transactions involving fraud proceeds. His conduct included accepting over $38 million of the Kingston's and his brother's fraud proceeds, converting much of the proceeds into cashiers' checks which he held outside the banking system for months, then funneling some of the proceeds back to his brother in disguised ways through international wires and other means, and keeping millions for himself which he used to benefit himself, his family, and his associates. The purchase of this building at Stellar Court ("Subject Property") was made with nearly one million of the fraud proceeds that travelled from the U.S. Treasury to Washakie Renewable Energy ("Washakie") in Utah to Turkey and Luxembourg to Speedy Lion in California, then cashiers checks,

and finally to the newly created Century Energy bank account controlled by Defendant. Thus, the Subject Property is directly traceable to the crimes with which the defendant is charged in this case. Now the building (even though subject to forfeiture) has apparently been improved and is being leased to some other company unrelated to Century Energy.

The funds are also traceable to money laundering crimes already found in the District of Utah. As the court knows, this case began in that district involving one of the largest bio-fuel tax credit frauds in the history of the United States related to a fraudulent bio-diesel fuel plant in Plymouth, Utah, run by Washakie. On August 1, 2018, the United States filed its initial indictment related to this fraud, *United States v. Lev Dermen, et al.*, 2:18-cr-00365-JNP (hereinafter "Utah Case"), in the District of Utah. After the filing of the indictment, investigators learned that over $9 million in fraud proceeds were used by Defendant Termendjian to purchase various properties including the Subject Property. On December 15, 2022, after a forfeiture trial in the Utah Case, the district court in Utah found that the Subject Property is 100 percent traceable to the bio-diesel fuel tax credit fraud as either proceeds of fraud or involved in money laundering. Mem. Dec. Findings re Specific Property Subject to Forfeiture 33-34, ECF 1376 (Utah Case). Specifically:

> The court finds by a preponderance of the evidence that this property was acquired with both fraud proceeds and property involved in money laundering (100% of purchase price) as 33 Case 2:18-cr-00365-JNP Document 1376 Filed 11/15/22 PageID.33914 Page 34 of 43 shown on GX F24, and by

> the testimony of Agent Washburn, and is connected to the Defendant's convictions for Counts 1 and 2 of the Indictment. Furthermore, the court finds that, of the $2 million in funds used to purchase the property, $1,052,884.56 (52.64% of purchase price) represents fraud proceeds traceable to U.S. Treasury checks that were obtained pursuant to the mail fraud scheme charged in Count 1, and the remaining $947,115.44 represents property involved in money laundering not traceable to the fraud scheme. Forfeiture Tr. at 443-44 (Washburn).8 The court further finds that the entire $2 million used to purchase the property represents funds involved in money laundering transactions, including $1,052,884.56 of funds that were moved through international bank accounts as part of the money laundering conspiracy charged in Count 2, and the property is subject to forfeiture on that basis as well.

*Id.* Based on these findings, on March 24, 2023, the Utah court entered a Preliminary Order of Forfeiture forfeiting the Subject Property to the United States. ECF 1397 (Utah Case).

Any profits obtained from a lease of a property that is 100 percent traceable are likewise subject to forfeiture as property traceable to property subject to forfeiture. The argument in the response (Resp. 11-12) that the "future" lease payments are unconnected to the property and the offense and are substitute assets is incorrect. *See, e.g.*, *United States v. Johnson*, 2023 WL 3136141, *8-9 (W.D.N.C. Apr. 27, 2023) (defendant convicted of bank fraud must forfeit not only the proceeds of the false loans and the property purchased with them, but also the rental income on those properties and any appreciation in their value). The law aligns with common sense. The lease payments are subject to restraint.

## II. THE DEFENDANT HAD NOTICE THAT THE SUBJECT PROPERTY (AND PROPERTY TRACEABLE TO THE SAME SUCH AS LEASE PAYMENTS) ARE SUBJECT TO RESTRAINT

The Defendant has been aware for many years that proceeds traceable to this property are subject to restraint. The Utah Case was originally filed on August 1, 2018. The purchase of the Subject Property using fraud proceeds was discovered by the government soon after. On May 13, 2021, the United States filed a lis pendens in the Riverside County Recorder's Office in California giving notice to the world of its intent to forfeit the Subject Property. Also, in a June 17, 2021 Seventh Bill of Particulars (ECF 1250 (Utah Case)), the United States notified the Utah defendants, including the defendant's brother, Lev Dermen, that it was seeking to forfeit the Subject Property:

> The $15 million withdrawn from the Citibank account in the name of Century Energy on 12/21/18, deposited into Citibank accounts ##8979 / 9961, or the proceeds thereof, and the property purchased with the proceeds, including:
>
> 21. Solar Turbines and related equipment which were paid for by Century Energy account #9961 $3,900,000 wire transfer on 10/01/19 to HENDRIX HENERGY;
>
> 22. Compressors and related equipment bought with a $200,000 cashier's check dated 10/04/19, and made payable to Industrial Energy Solutions, Inc.;
>
> 23. Industrial Equipment, and/or storage tank and related equipment which was purchased by the 10/28/19 $216,000 wire to China Zhangjiagang Furuisuzhou to buy such industrial equipment, reference invoice #FR-2019-1023A, storage tank deposit, and February 25, 2020 $60,600 wire to the same for "loading skid & pump skid";
>
> 24. 9153 Stellar Court, Corona, CA, 92883, purchased using Mariners Escrow on 10/30/19, in a 10/30/19 $2,000,000 wire to Mariners Escrow (containing at least $982,969.48 of SUA proceeds), loan for escrow #57147-RM, and the property tax for which was paid using Check #1012 for $26,000 dated 12/09/19 with SUA proceeds;

Soon after, as described above, the district court in Utah found that the Subject Property is 100 percent traceable to the bio-diesel fuel tax credit fraud. Mem. Dec. Findings re Specific Property Subject to Forfeiture 33-34, ECF 1376 (Utah Case). The United States sent notice of this forfeiture order to Defendant Termendjian on April 6, 2023. ECF 1586 (Utah Case). On April 20, 2023, the defendant and related companies, including Stellar Court, LLC, filed a petition claiming an interest in various properties subject to the Preliminary Order of Forfeiture including the Subject Property. ECF 1431 (Utah Case). With the approval of the United States, the defendant obtained a stay of this petition until the resolution of the criminal charges in this case. ECF 1571 (Utah Case).

With an understanding of the full context of the Subject Property, it is clear that the forfeiture of this property has been known to the defendant and his companies for over five years. The defendant and his company are aware of the order in the Utah Case. They are also aware that the property is sought for forfeiture in this case. Before they engaged in “significant capital” investments related to the Subject Property (Resp. at 10), a property known by them to be subject to forfeiture, they should have consulted and coordinated with the party who has obtained a forfeiture order related to the property and who anticipates obtaining another such order before the end of this year.

**III. URGENT CIRCUMSTANCES WARRANT RESTRAINT**

There is an urgent need to determine how the profits from this lease will be held pending the adjudication of this case. The trial will occur in about three months. Even then, the ancillary process to sort out third-party interests will take time, likely several months at a minimum, but probably longer due to the complexities of the case.[1] Consequently, there is an urgent need to enter an order this summer (when the government was informed that profits would become available) related to the lease of the Subject Property and the safeguarding of those profits pending the outcome of the forfeiture and ancillary proceeding.

The defendant's history of ignoring forfeiture orders has further exacerbated the urgency of restraint. The defendant has already violated a Restraining Order issued in the Utah matter by installing the Solar Turbines into his planned LNG plant in California without any prior notice and approval from the government or the Utah Court.[2] Restraint is necessary to curtail this pattern of behavior.

Finally, the defendant necessitated the present urgent action by improving a property they knew was subject to forfeiture and then

---

[1] The ancillary proceeding for many of the petitions in the Utah Case are still ongoing since their filing in April and May of 2023. The government expects that the ancillary proceedings in this case will also endure into 2027.

[2] The Government is in the position of having to find a suitable contractor and spend at least $18,000 to have the contractor help it execute this Court's Writ of Entry issued earlier this year so the status of the turbines subject to forfeiture can be ascertained.

leasing it out for profit without prior consent of the United States. The defendant cannot now complain that his actions have warranted an urgent response by the court.

## IV. THE RELIEF REQUESTED IS SUFFICIENTLY NARROWLY TAILORED

The defendant's proposed relief demonstrates that the government's original request was sufficiently narrowly tailored. The defendant's request for relief is nearly identical to the relief the government seeks here, but instead of having the defendant's 50% share of the profits (after expenses) paid into the Treasury Fund, he asks this Court to order it paid in to some unspecified escrow account, and without notice or any reporting. However, involving a third-party escrow agent only increases the costs and therefore diminishes any property (the funds from the lease) subject to preservation. This approach would therefore not be appropriate. Additionally, the reporting of any payments made from the LLC to the Treasury Fund is necessary to record and keep track of the property subject to forfeiture, and is but a minor burden to meet. The court should maintain this requirement in any order it enters.

The United States maintains that the Proposed Order is sufficiently narrowly tailored to fulfill the requirements of the forfeiture order. After the order is entered and the urgent issue is addressed, the United States is willing to work with the defendant and the involved companies to craft an order that will fairly set aside lease profits until the conclusion of the ancillary proceeding

when third-party rights in the property will be conclusively determined.

**V. CONCLUSION**

The Court should initially enter the order as requested. Following the entry of the order, the United States will engage with the defendant and the third-party partner to craft adjustments to the order that may be necessary to ensure fair retention of lease profits while adequately allowing for expenses.

Dated: July 06, 2026

Respectfully submitted,

BILAL A. ESSAYLI
First United States Attorney

*/s/Megan L. Jones*
RICHARD M. ROLWING
Senior Litigation Counsel
Megan L. Jones
Trial Attorney

Attorneys for the United States

Certificate of Service

I certify that on the 6th of July, 2026, I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby providing notice to all parties of record in this case.

*/s/ Megan L. Jones*
Megan L. Jones
Trial Attorney